IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MARIA LISA COLLAZO,                    )
                                       )  Civil Action
            Plaintiff                  )  No. 10-cv-07010
                                       )
       v.                              )
                                       )
THE COUNTY OF LANCASTER,               )
LANCASTER COUNTY PRISON BOARD,         )
LANCASTER COUNTY PRISON, and           )
JANE DOES 1-16,                        )
                                       )
            Defendants                 )

                         *    *    *

APPEARANCES:

        CHRISTIAN EARL EABY, ESQUIRE
            On behalf of Plaintiff

        DAVID J. MACMAIN, ESQUIRE
        MATTHEW J. CONNELL, ESQUIRE
            On behalf of Defendants

                    *    *    *

                O P I N I O N

JAMES KNOLL GARDNER
United States District Judge

        This matter is before the court on the Motion for

Summary Judgment Pursuant to Fed.R.C.P. 56 of Defendants The

County of Lancaster, Lancaster County Prison Board and Lancaster

County Prison filed May 2, 2012 ("Defendants' Summary Judgment

Motion").[1]  Plaintiff's Memorandum of Law in Opposition to the

Motion for Summary Judgment Filed by Defendants County of

---

[1]    Together with their motion for summary judgment, defendants filed
a memorandum of law in support of the motion and a statement of undisputed
material facts.

Lancaster, Lancaster County Prison Board and Lancaster County Prison was filed May 17, 2012 ("Plaintiff's Memorandum of Law").[2] Plaintiff filed a corrected version of her memorandum of law on May 22, 2012.

<u>SUMMARY OF DECISION</u>

For the reasons expressed below, I grant Defendants' Summary Judgment Motion.  I grant Defendants' Summary Judgment Motion because defendants do not need reasonable suspicion that an individual is concealing weapons or contraband before subjecting that individual to a strip search upon admission to the general population of a prison.

Although there are disputes of fact, I also grant Defendants' Summary Judgment Motion because I conclude that the disputed facts are not material to the legal claims before the court concerning the liability of the municipality for plaintiff's alleged injuries.  The factual disputes concern whether all of the blinds were closed during plaintiff's strip searches and whether corrections officers touched plaintiff during any of the strip searches.

These facts are not material because a municipality can be liable pursuant to 42 U.S.C. § 1983 only when plaintiff's injuries were caused by a custom or policy of the municipality,

_____

[2]     Together with Plaintiff's Memorandum of Law, plaintiff filed a counter-statement of undisputed material facts.  Defendants filed a reply brief on June 25, 2012, and plaintiff filed a surreply brief on July 17, 2012.

-2-

and here plaintiff has provided no proof that such custom or policy exists.  Thus, I conclude that there are no genuine issues of <u>material</u> fact to preclude granting summary judgment.

Finally, I dismiss all claims against defendants Jane Does 1-16 because plaintiff has not sought leave to amend her complaint to substitute any specific named individuals for the sixteen unnamed Jane Does, and because discovery is closed.

<u>JURISDICTION</u>

This court has jurisdiction pursuant to  28 U.S.C. § 1331 because plaintiff's complaint alleging that defendants violated her federal Constitutional rights was brought pursuant to 42 U.S.C. § 1983, and thus poses a federal question.

<u>VENUE</u>

Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this cause of action occurred in Lancaster County, Pennsylvania, which is located in this judicial district.

PLAINTIFF'S CLAIMS

Plaintiff Maria Lisa Collazo brings this civil action pursuant to 42 U.S.C. § 1983.  In Count I of her two-count complaint, titled "42 U.S.A. [sic] § 1983", plaintiff alleges that defendants The County of Lancaster, Lancaster County Prison Board, Lancaster County Prison, and Jane Does 1-16 violated her right under the Fourth Amendment of the United States Consti-

tution to be free from unreasonable searches by subjecting plaintiff to a strip search without reasonable suspicion.[3]

By my Order dated April 4, 2011 and filed April 6, 2011, I granted defendants' motion to dismiss, and dismissed, Count II, titled "STATE CONSTITUTIONAL TORT" from plaintiff's complaint.  In Count II plaintiff alleges that defendants violated her rights under Article 1, §§ 1 and 8 of the Constitution of the Commonwealth of Pennsylvania and Pennsylvania statutory law.[4]

PROCEDURAL HISTORY

Plaintiff initiated this action on December 2, 2010 by filing a Complaint for Deprivation of Legal Rights against defendants The County of Lancaster, Lancaster County Prison Board, Lancaster County Prison and Jane Does 1-16 in the Court of Common Pleas of Lancaster County ("Complaint").  The Complaint alleges that defendants violated plaintiff's civil rights by conducting multiple illegal strip searches during plaintiff's two incarcerations at Lancaster County Prison in 2008.

Defendants removed this action to the United States District Court for the Eastern District of Pennsylvania on December 2, 2010.

---

[3]     Complaint for Deprivation of Legal Rights, at ¶¶ 81-82 and 86.

[4]     Act of May 11, 1911, P.L. 274, § 4, as amended 61 P.S. § 384, repealed by Act of August 11, 2009, P.L. 147, No. 33, see now, 61 Pa.C.S.A. § 5902.

On December 13, 2012, defendants filed in a single document a motion to dismiss Count II of plaintiff's Complaint and a motion for sanctions.  By my Order dated April 4, 2011 and filed April 6, 2011, I granted defendants' motion to dismiss Count II and denied their motion for sanctions.

The Answer and Affirmative Defenses of Defendants County of Lancaster, Lancaster County Prison Board, and Lancaster County Prison to Plaintiff's Complaint for Deprivation of Legal Rights was filed April 14, 2011.

By my Rule 16 Status Conference Order dated August 4, 2011 and filed August 10, 2011 I set a February 10, 2012 discovery deadline.

On May 2, 2012 Defendants' Summary Judgment Motion was filed.  On that date, defendants also filed a Statement of Undisputed Facts in Support of the Motion for Summary Judgment Pursuant to Fed.R.C.P. 56 of Defendants County of Lancaster, Lancaster County Prison Board and Lancaster County Prison.

Plaintiff's Memorandum of Law was filed on May 17, 2012.  A corrected version of Plaintiff's Memorandum of Law was filed May 22, 2012.

On June 25, 2012, Defendants' Reply to Plaintiff's Opposition to Defendants' Motion for Summary Judgment was filed. Plaintiff's Surreply to Defendants' Reply That Defendants Filed

in Support of Their Motion for Summary Judgment was filed on July 17, 2012 ("Plaintiff's Surreply").

To date, plaintiff has not requested leave to amend her Complaint to replace defendants Jane Does 1-16 with any specific named individuals.

STANDARD OF REVIEW

In considering a motion for summary judgment, the court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-2510, 91 L.Ed.2d 202, 211 (1986); Federal Home Loan Mortgage Corporation v. Scottsdale Insurance Company, 316 F.3d 431, 443 (3d Cir. 2003).

Only facts that may affect the outcome of a case are "material".  Moreover, all reasonable inferences from the record are drawn in favor of the non-movant.  Anderson, 477 U.S. at 255, 106 S.Ct. at 2513, 91 L.Ed.2d at 216.

Although the movant has the initial burden of demonstrating the absence of genuine issues of material fact, the non-movant must then establish the existence of each element on

which it bears the burden of proof.  See Watson v. Eastman Kodak Company, 235 F.3d 851, 857-858 (3d Cir. 2000).

Parties cannot avert summary judgment with speculation or by resting on the allegations in their pleadings; rather, they must present competent evidence from which a jury could reasonably find in their favor.  Ridgewood Board of Education v. N.E. for M.E., 172 F.3d 238, 252 (3d Cir. 1999); Woods v. Bentsen, 889 F.Supp. 179, 184 (E.D.Pa. June 14, 1995) (Reed, Jr., J.).

## FACTS

Based upon the pleadings, record papers, exhibits, and the parties' statements of undisputed facts, the relevant facts, viewed in the light most favorable to plaintiff, as required by the forgoing standard of review, are as follows.

Plaintiff Maria Lisa Collazo is an adult individual who resides in New Holland, Lancaster County, Pennsylvania.[5]  Defendants are the County of Lancaster, Pennsylvania, Lancaster County Prison Board, Lancaster County Prison, and Jane Does 1-16.

Plaintiff was incarcerated twice in 2008: from August 12, 2008 to early September 2008 and from late September 2008 until October 2008.[6]  On August 12, 2008 plaintiff was

---

[5]     Deposition of Maria Collazo, September 6, 2011, at page 18, Exhibit D to the Memorandum of Law in Support of the Motion for Summary Judgment Pursuant to Fed.R.Civ.P. 56 of Defendants County of Lancaster, Lancaster County Prison Board and Lancaster County Prison ("Defendants' Memorandum of Law").

[6]     Deposition of Maria Collazo, at page 20.

arrested on a bench warrant for failure to pay fines or costs for summary offenses.[7]

Plaintiff had four outstanding warrants for her arrest. One warrant was issued for Operation following suspension of registration in violation of 75 Pa.C.S.A. § 1371.  Two warrants were issued for Driving while operating privilege is suspended or revoked in violation of 75 Pa.C.S.A. § 1543.  And one warrant was issued for [exceeding] Maximum speed limits in violation of 75 Pa.C.S.A. § 3362.  Two hearings were conducted before two Magisterial District Judges, and plaintiff received fines on all four charges.[8]

Because plaintiff was unable to pay the fines, she was sentenced to five days incarceration for driving while her vehicle registration was suspended and seven days incarceration for one charge of driving while her driver's license was suspended.[9]  Plaintiff's sentence provided that she would be released from prison as soon as she paid her fines, but if she failed to pay any part of her fines, she would serve her entire

---

[7]     Deposition of Maria Collazo, at page 29; Complaint at ¶ 48.

[8]     Deposition of Warden Vincent Guarini, September 20, 2011, at pages 22-26, Exhibit A to Defendant's Memorandum of Law; Guarini Deposition, Exhibit 2; and Plaintiff's Statement, at ¶¶ 1-5, Exhibit 2 to Plaintiff's Memorandum of Law.

[9]     Deposition of Warden Vincent Guarini, at pages 22-26; and Guarini Deposition, Exhibit 2.

sentence.[10]  Plaintiff was then transported to Lancaster County Prison.[11]

As of August 12, 2008, defendants utilized a form to determine whether a new inmate would be strip searched ("Strip Search Checklist").[12]  If a new inmate had already been sentenced, she would be strip searched.[13]  On plaintiff's August 12, 2010 Strip Search Checklist, the line next to "New Admission is Sentenced" was checked, and therefore plaintiff was strip searched upon admission to the prison.[14]

---

[10]     Plaintiff's Statement, at ¶ 5.

[11]     Id., at ¶ 7.

[12]     Throughout this Opinion, the term "strip search" refers to the visual inspection of the body, including the visual inspection of body cavities.  The term also includes an officer instructing an inmate to bend over and cough, and inspecting under the inmate's arms, stomach, and breasts, as well as inside the inmate's mouth.  (Deposition of Warden Vincent Guarini, at pages 19-20).

[13]     Id., at page 18.

          If a newly sentenced inmate did not qualify for the other items on the checklist, the prisoner was subject to merely a pat search and not a strip search.  (See Deposition of Troy Mitchell George Angstadt, a Commitment Officer at Lancaster County Prison, February 29, 2012, at pages 28-29, Exhibit 12 to Plaintiff's Memorandum of Law).

          Officer Angstadt is the only person on the record to claim that this checklist refers to pat searches instead of strip searches.  However, whether plaintiff underwent a strip search or a pat search is not material to the constitutional issue here.  Accordingly, taking the facts in the light most favorable to plaintiff, as I am required to do under the applicable standard of review, I will presume throughout this Opinion that the checklist defendants used for new inmates refers to strip searches and not pat-down searches.

[14]     Deposition of Maria Collazo, at page 39; and Deposition of Warden Vincent Guarini, Exhibit 1.

Plaintiff testified in her deposition that she was taken to a room with two glass windows, one with no blinds and the other with blinds that were only partially closed.[15]

During plaintiff's strip search on August 12, 2008, there was no one else in the room besides plaintiff and the female officer conducting the search.[16]  Plaintiff believed that two male officers could see her through the glass window because she could see them.  At no point, however, did plaintiff see anyone outside the room look at her through the window.[17]

After plaintiff took off her clothing, the female officer conducting the strip search, without wearing gloves, "shook [her] hair around, took [her] sanitary napkins, [and] lifted up [her] breasts".[18]  The officer also lifted up

---

[15]     Deposition of Maria Collazo, at pages 36, 39 and 42.

Sergeant Cheryl Steberger of Lancaster County Prison testified in her deposition that the prison's strip search protocol requires that the blinds be closed at all times during strip searches.  (Declaration of Sergeant Cheryl Steberger, Exhibit K to Defendants' Memorandum of Law).  In addition, Correctional Officer Bernadette Rychalsky testified in her deposition that the blinds on both windows are always shut.  (Deposition of Bernadette Rychalsky, January 10, 2012, at page 19, Exhibit 16 to Plaintiff's Memorandum of Law).

Because for purposes of deciding a motion for summary judgment, I must draw all reasonable inferences from the record in favor of the non-movant (plaintiff, here), I will accept as true for summary judgment purposes only, plaintiff's deposition testimony that there were no blinds on one window, and that the blinds on the other window were only partially closed, despite the contrary testimony of the two corrections officers.

[16]     Deposition of Maria Collazo, at page 40.

[17]     Id., at pages 42, 45 and 57.

[18]     Id., at page 39.

plaintiff's stomach and checked her mouth by putting the
officer's finger inside plaintiff's mouth.[19]

Plaintiff was required to change her clothing with a
female officer present before leaving for court, and was strip
searched upon her return from court.[20]  An officer touched her
buttock when she was taken to a court hearing.[21]

Plaintiff was released from Lancaster County Prison on
September 2, 2008.[22]  On September 27, 2008 plaintiff was
arrested for providing false identification to a police
officer.[23]  Plaintiff was taken to the police station.  Because
plaintiff was on probation[24] at the time of her arrest, a judge
determined that plaintiff had violated her probation.  As a

---

[19]     Deposition of Maria Collazo, at page 79.

[20]     Id., at pages 53-54; and Plaintiff's Statement, at ¶¶ 9 and 31.

[21]     Deposition of Maria Collazo, at page 43.

[22]     Id., at page 50.

[23]     Id., at pages 64-65.

[24]     It is not clear from the record whether plaintiff was on probation
or parole at the time of her August 12, 2008 arrest.  Defense counsel
Matthew J. Connell asked plaintiff the following two questions during her
deposition, both of which plaintiff responded to in the affirmative: "You're
aware that you were on probation for that felony retail theft at the time of
the August 12, 2008 arrest, correct?" and "You were on parole at the time of
the August, 2008 arrest, correct?"  (Deposition of Maria Collazo, at page 31).

Plaintiff stated later in her deposition that she was on probation
at the time of her August 2008 arrest.  (Id., at page 66).  However, it does
not matter for these purposes whether plaintiff was on parole or probation at
the time of her August 12, 2008 arrest.  What is pertinent is whether a judge
had determined that she be admitted to Lancaster County Prison that day.

result, she was ordered to remain at Lancaster County Prison until reaching her maximum sentence date on October 27, 2008.[25]

       As was the case in plaintiff's August 12, 2008 prison admission, her Strip Search Checklist on September 27, 2008 had the line checked next to "New Admission is Sentenced". Accordingly, plaintiff was strip searched in the same room with the two glass windows.[26]   Again, plaintiff did not see anyone looking at her through the glass.[27]

       Plaintiff took off all her clothing and the female officer "took her finger, put it in [plaintiff's] cheeks to make sure [she] didn't have nothing [sic] in [her] mouth".[28]   The officer also "put her hands through [plaintiff's hair], shook it around, [to] make sure nothing was there."[29]   The officer also asked plaintiff to bend over and cough, as the officer inspected her body cavities with a flashlight.[30]   The officer told

---

[25]     Deposition of Warden Vincent Guarini, at pages 33-34; Guarini Deposition, Exhibit 5; and Deposition of Maria Collazo, at page 66.

[26]     Deposition of Warden Vincent Guarini, Exhibit 4; and Deposition of Maria Collazo, at pages 72-73 and 78.

[27]     Deposition of Maria Collazo, at page 78.

[28]     Id., at page 72.

[29]     Id., at page 75.

[30]     Id., at pages 75-76.

plaintiff to lift up her stomach, arms, and breasts.[31]  Plaintiff complied with all instructions.[32]

Plaintiff was discharged from her second incarceration on October 17, 2008.[33]  During both of plaintiff's discharges on September 2, 2008 and October 17, 2008 she was required to change her clothing in front of a female officer so that the officer could ensure that plaintiff would not take any item that belonged to the prison with her.[34]  Upon plaintiff's leaving Lancaster County Prison, the officers did not ask her to bend over and cough; they did not look under her arms, breasts, or stomach, and did not check her hair or mouth.[35]

Plaintiff was subjected to between three to sixteen strip searches during her two incarcerations at Lancaster County Prison in August through October 2008.[36]  In addition to being

_____

[31]     Deposition of Maria Collazo, at page 76.

[32]     Id., at pages 75-76.

[33]     Deposition of Warden Vincent Guarini, Exhibit 5.

[34]     Deposition of Maria Collazo, at pages 80-81.

[35]     Id.

[36]     Plaintiff's Statement, at ¶¶ 15 and 33.

In paragraph 15 of Plaintiff's Statement she states:

> I do not know the exact number if times I was strip searched but it was when I went in and when I had visitors and when I came back from Court.  It was more than 1 or 2 times and I think it was closer to ten times.  I was also at times strip searched when leaving.

(Paragraph 36 continued):

-13-

searched upon her admission to the prison and on her return from court, plaintiff was also strip searched when she had visitors.[37]

DISCUSSION

**§ 1983 Claim**

Strip Searches at Initial Admission

Plaintiff contends that defendants violated her Fourth Amendment right to freedom from unreasonable searches by subjecting her to multiple strip searches without reasonable suspicion that she possessed weapons or contraband.[38]

In Florence v. Board of Chosen Freeholders of the County of Burlington, 566 U.S. ___, ___, 132 S.Ct. 1510, 1523, 182 L.Ed.2d 566, 583 (2012) the United States Supreme Court held that the Fourth Amendment to the United States Constitution does not require correctional officers to exempt from strip searches any detainees who will be admitted to a jail's general population.

---

(Continuation of footnote 36):

      In paragraph 33 of Plaintiff's Statement she states:

            I cannot remember the total number of times I was strip searched but I tried to remember when I made the complaint thinking that I had been strip searched at least 16 time[s] but it could have been less.  I think it might be closer to 10 or 12 but there are no records.

      Based upon the two averments in Plaintiff's Statement, I have estimated that plaintiff was strip searched somewhere between 3 and 16 times.

[37]    Id., at ¶ 15.

[38]    Complaint, at ¶¶ 4, 29 and 82.

-14-

The <u>Florence</u> Court found constitutional the Essex County Correctional Facility's policy of strip searching every inmate entering the general population, "regardless of the circumstances of the arrest, the suspected offense, or the detainee's behavior, demeanor, or criminal history."  566 U.S. at ___, 132 S.Ct. at 1520, 182 L.Ed.2d at 579.  The Supreme Court found that this policy is reasonably related to the legitimate and substantial security interest of the correctional facility in preventing any new inmate from putting his own or others' lives at risk, either from disease, gang affiliation, or contraband. 566 U.S. at ___, 132 S.Ct. at 1514, 182 L.Ed.2d at 573.

The strip searches considered by the Court included "close visual inspections while undressed", "directing detainees to shake their heads or to run their hands through their hair to dislodge what might be hidden there...instructions to raise arms, to display foot insteps, to expose the back of the ears, to move or spread the buttocks or genital areas, or to cough in a squatting position."  566 U.S. at ___, 132 S.Ct. at 1515, 182 L.Ed.2d at 574.

Plaintiff contends that her strip searches upon admission to the general population of Lancaster County Prison violated her Fourth Amendment right against unreasonable searches.  Applying <u>Florence</u>, the mere fact that plaintiff was subjected to a strip search upon admission to the general

population of the prison is insufficient to constitute a
violation of plaintiff's Fourth Amendment rights.

Plaintiff contends that the Supreme Court's decision in
Florence was fact-sensitive.[39]  In the Florence majority opinion,
Justice Kennedy states the following:

> The circumstances before the Court, however, do
> not present the opportunity to consider a narrow
> exception of the sort Justice Alito describes...
> which might restrict whether an arrestee whose
> detention has not yet been reviewed by a
> magistrate or other judicial officer, and who can
> be held in available facilities removed from the
> general population, may be subjected to the types
> of searches at issue here.

566 U.S. at ___, 132 S.Ct. at 1523, 182 L.Ed.2d at 582.

Even if the Supreme Court were to accept the exception
Justice Kennedy describes through the words of Justice Alito,
plaintiff's circumstances would not fit within that exception.

Plaintiff's two incarcerations were reviewed by
judicial officers prior to her admission to Lancaster County
Prison.  On August 12, 2008 plaintiff was arrested on a bench
warrant for failure to pay fines for summary offenses.[40]
Hearings were conducted before two separate Magisterial District
Judges and plaintiff was fined on all four charges: one charge of
Operation following suspension of registration in violation of
75 Pa.C.S.A. § 1371, two charges of Driving while operating

---

[39]    Plaintiff's Memorandum of Law, at pages 10 and 14-15.

[40]    Complaint, at ¶ 48.

privilege is suspended or revoked in violation of 75 Pa.C.S.A.
§ 1543, and one charge for [exceeding] Maximum speed limits in
violation of 75 Pa.C.S.A. § 3362.[41]

Because of her inability to pay the fines, plaintiff
was sentenced to a period of incarceration at Lancaster County
Prison.[42]  On September 27, 2008 plaintiff was also seen by a
Magisterial District Judge, who determined that she had violated
her probation, before being taken to the prison for a strip
search.[43]

In addition, plaintiff contends that there were
alternatives available to defendants other than incarceration in
the general prison population, and because of this, Justice
Alito's exception to the Florence majority's general rule should
apply.  However, the alternatives plaintiff raises are not the
alternatives to which Justice Kennedy or Justice Alito refer.

Plaintiff refers to sentencing alternatives under
Pennsylvania law for inability to pay fines, which include
providing for installment payments.[44]  The alternative to which
Justices Kennedy and Alito refer, however, is an alternative

---

[41]    Deposition of Warden Vincent Guarini, at pages 22-26; Guarini
Deposition, Exhibit 2; and Plaintiff's Statement, at ¶¶ 1-5.

[42]    Deposition of Warden Vincent Guarini, at pages 22-26; and
Deposition of Warden Vincent Guarini, Exhibit 2.

[43]    Deposition of Maria Collazo, at page 66; and Deposition of Warden
Vincent Guarini, Exhibit 5.

[44]    Plaintiff's Surreply, Exhibits B and C.

facility where arrestees can be held, separate from the general prison population, when they have not yet been before a judge or magistrate.

They were not referring to a sentence that is alternative to incarceration, such as providing for payments to be made in installments when incarceration is for failure to pay fines.  Plaintiff provides no evidence regarding the availability of alternative facilities removed from Lancaster County Prison's general population.  Therefore, the possible exception alluded to by Justice Kennedy does not apply in this case.

### Strip Searches Within View of Third Parties

Plaintiff contends that when she was strip searched in a room with two glass windows, others outside the room saw her being searched because one window had no blinds and the other window had blinds that were only partially closed.[45]  However, plaintiff stated that the reason she thought men could see her was because she could see them.[46]  Plaintiff admitted that she never actually saw any man looking through the glass at her.[47]

Because below I dismiss plaintiff's claims against defendants Jane Does 1-16, plaintiff's only remaining claim is a

---

[45]    Deposition of Maria Collazo, at pages 36 and 42.

[46]    Id., at page 42.

[47]    Id., at page 57.

municipal liability claim against The County of Lancaster, the Lancaster County Prison Board, and Lancaster County Prison.[48]

Pursuant to the United States Supreme Court's decision in <u>Monell v, Department of Social Services of the City of New York</u>, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037-2038, 56 L.Ed.2d 611, 638 (1978) a municipality can only be held liable in a § 1983 claim when a custom or policy of a governmental entity causes plaintiff injury or harm, and not solely when an injury is inflicted by a government employee or agent.

The conflicting deposition testimony of plaintiff, on the one hand, and Sergeant Steberger and Officer Rychalsky, on the other, creates a dispute of fact concerning whether the blinds were closed when plaintiff was being strip searched. As noted above, Sergeant Cheryl Steberger stated in her Declaration that the policy of Lancaster County Prison is to have the blinds closed at all times.[49] Correctional Officer Bernadette Rychalsky testified in her deposition that the blinds on the window and the door are always shut.[50]

Under <u>Monell</u>, however, this dispute is not material to the constitutionality of plaintiff's strip searches. Whether or

---

[48]    As defendants pointed out in their brief in support of their motion for summary judgment, the Lancaster County Prison and the Lancaster County Prison Board have no existence apart from the County of Lancaster. (Defendants' Memorandum of Law, at page 7, n.5).

[49]    Declaration of Sergeant Cheryl Steberger, at ¶ 6.

[50]    Deposition of Bernadette Rychalsky, at page 19.

not there were blinds on both windows and whether all blinds were
closed is immaterial because plaintiff, as the non-movant, has
failed to establish that defendant had a custom or policy of
maintaining windows with no blinds or open blinds on windows
during strip searches.

Although I concluded pursuant to the applicable
standard of review that plaintiff was strip searched in a room
with glass windows which may have been partially uncovered, and
despite the possibility that someone other than the searching
officer might have been able to see her being strip searched,
plaintiff has not provided evidence, as required by Monell, that
it was a custom or policy of the municipal defendants to conduct
strip searches in that fashion.

Plaintiff relies on the Complaint in Kurian v. The
County of Lancaster, E.D.Pa. Civ.A. No. 2007-cv-03482 (Diamond,
J.), to support her contention that she has satisfied the Monell
requirement that Lancaster County has an established custom or
policy of engaging in illegal strip searches.[51] Kurian was a
class action suit alleging that on April 11, 2006 and on other
unspecified dates, officers at Lancaster County Prison conducted
illegal strip searches on several inmates in the county prison.

However, as noted below, the Complaint in Kurian does
not allege that Lancaster County had a custom or policy of

---

[51]     Plaintiff's Surreply, at page 6; and Deposition of Warden Vincent
Guarini, at page 40.

conducting strip searches within the view of third parties of the opposite sex, touching inmates during strip searches, conducting strip searches after contact visits, conducting strip searches upon return from court, or handling feminine hygiene atricles during strip searches.

Because plaintiff has not provided proof of a custom or policy of conducting strip searches in a room visible to third parties, defendant municipalities are not liable under § 1983 for such actions, whether they occurred or not.

<u>Touching During Strip Searches</u>

The Supreme Court in <u>Florence</u> left open the possibility that physical touching during strip searches may be unconstitu-tional: "There also may be legitimate concerns about the inva-siveness of searches that involve the touching of detainees." 566 U.S. at ___, 132 S.Ct. at 1523, 182 L.Ed.2d at 583.  Here, there is a factual dispute concerning whether plaintiff was touched by correction officers during any of her strip searches. However, the dispute is not material to the resolution of this matter.

Plaintiff alleges that during the August 12, 2008 strip search, the female officer "shook [her] hair around, took [her] sanitary napkins, [and] lifted up [her] breasts" without gloves,

in addition to lifting up her stomach and checking her mouth by putting the officer's finger inside plaintiff's mouth.[52]

Plaintiff also alleges that an officer touched her buttock when she was taken to a court hearing.[53]

Plaintiff further alleges that during the September 27, 2008 strip search, the female officer "took her finger, put it in [plaintiff's] cheeks", and "put her hands through [plaintiff's hair], shook it around, [to] make sure nothing was there."[54]

In contrast, Officers Rockwell and Rychalsky, who conducted strip searches of plaintiff on August 12, 2008 and September 27, 2008, respectively, stated that they never touch inmates during strip searches.[55]

Although there is a dispute concerning whether or not plaintiff was touched during any of the strip searches, this dispute is not material to the issue of whether defendants may be liable for these instances of potential physical contact.  Under Monell, unless plaintiff provides proof that the violations were caused by a custom or policy of a defendant-municipality, the municipality is not liable.

---

[52]    Deposition of Maria Collazo, at page 39.

[53]    Id., at page 43.

[54]    Id., at pages 72 and 75.

[55]    Deposition of Cynthia Rockwell, January 10, 2012, at page 12, Exhibit 16 to Plaintiff's Memorandum of Law; Deposition of Bernadette Rychalsky, at page 12; and Deposition of Warden Vincent Guarini, Exhibits 1 and 4.

Plaintiff has failed to provide evidence that the municipal defendants have a custom or policy of touching inmates during strip searches.  To the contrary, Warden Guarini stated that officers do not touch detainees during a strip search unless the detainee fails to comply with instructions.[56]

Plaintiff's reliance on Kurian in this instance is misplaced because the complaint in Kurian mentions nothing about inappropriate touching.  Because plaintiff has not provided any evidence of a custom or policy of touching detainees during strip searches, defendant municipalities[57] cannot be liable for a § 1983 claim for such actions, whether they occurred or not.

<u>Strip Searches and Contact Visits</u>

Plaintiff alleges that she was subjected to strip searches when she had visitors.[58]  The United States Supreme Court held in Bell v. Wolfish, 441 U.S. 520, 557, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447, 481 (1979), that strip searches of inmates after a contact visit with someone from outside the institution do not violate inmates' Fourth Amendment right against unreasonable searches.

---

[56]    Deposition of Warden Vincent Guarini, at page 15.

[57]    Defendants Lancaster County Prison and Lancaster County Prison Board are not separate legal entities from the County of Lancaster for purposes of this analysis.  (Defendants' Memorandum of Law, at page 7, n.5).

[58]    Plaintiff's Statement, at ¶ 15; and Deposition of Maria Collazo, at page 29.

Warden Guarini stated that all visits at Lancaster County Prison are contact visits, and that it was the prison's policy in 2008 to strip search all inmates after contact visits.[59]  Plaintiff was not explicit in describing whether she was strip searched before or after her contact visits.  Applying Bell, the mere fact that plaintiff was subjected to a strip search *after* a contact visit is insufficient to constitute a violation of plaintiff's Fourth Amendment rights.

If plaintiff seeks to allege that she was strip searched *before* a contact visit, she has failed to provide evidence that doing so was a custom or policy of defendants, as required by Monell.  Plaintiff's reliance on Kurian in this instance is inapposite because the complaint in Kurian does not allege the occurrence of strip searches before contact visits. Therefore, defendants in the within matter cannot be liable under § 1983 for strip searches conducted on plaintiff before or after contact visits.

### Strip Searches Upon Return From Court

Plaintiff alleges that she was strip searched after returning from a court appearance, but does not indicate when that occurred.[60]  There is a dispute in the record concerning

---

[59]     Deposition of Warden Vincent Guarini, at pages 49-50.

[60]     Plaintiff's Statement, at ¶ 15.

whether detainees are actually strip searched upon their return from court proceedings.

In their depositions, Commitment Officer Troy Angstadt stated that no one is strip searched after returning from court;[61] Commitment Officer Louis Chirichello stated that most detainees are not strip searched upon their return from court;[62] Correctional Officer Cynthia Rockwell, Warden Vincent Guarini, and Staff Development Coordinator Carl Jones stated that all inmates are strip searched upon returning from court.[63]

The United States Supreme Court's decision in Bell upholding inmate strip searches would also apply to plaintiff's claims that she was strip searched after returning from court, because, at that point, plaintiff was returning from a "contact visit with a person from outside the institution."  441 U.S. at 557, 99 S.Ct. at 1884, 60 L.Ed.2d at 480-481.

In this case, because plaintiff left the prison to go to court, her visit with persons outside the prison occurred outside the prison rather than inside the prison.  Accordingly, even if defendants conduct strip searches on all inmates upon

---

[61]     Deposition of Troy Mitchell George Angstadt, February 29, 2012, at pages 18-19, Exhibit 12 to Plaintiff's Memorandum of Law.

[62]     Deposition of Louis Chirichello, February 29, 2012, at pages 22-23, Exhibit 10 to Plaintiff's Memorandum of Law.

[63]     Deposition of Cynthia Rockwell, at page 22; Deposition of Carl Jones, January 10, 2012, at page 26, Exhibit 18 to Plaintiff's Memorandum of Law; and Deposition of Warden Vincent Guarini, at pages 28 and 50.

their return from court, this policy does not violate their
Fourth Amendment right against unreasonable searches.

<u>Handling of Feminine Hygiene Items During Strip Searches</u>

Plaintiff alleges in her deposition that on August 12,
2008, an officer took her sanitary napkin, without gloves, during
one of the strip searches.[64]  In addition, plaintiff states that
on both August 12, 2008 and September 27, 2008, she received a
tote with sanitary napkins or tampons in it.[65]

Officer Rockwell, who strip searched plaintiff on
August 12, 2008, stated in her deposition that if inmates are
wearing a sanitary napkin, she has them put it, along with their
underwear, to the side while she visually inspects them, and if
they are wearing a tampon, Rockwell will instruct the inmates to
take it out and put it into a box.

Even if a security officer did take plaintiff's
sanitary napkin to search it, without gloves on, plaintiff has,
again, provided no evidence that this was a custom or policy of
the municipal defendants.  Plaintiff's reliance on <u>Kurian</u> in this
instance, is misplaced because the complaint in <u>Kurian</u> does not
allege inappropriate handling of sanitary napkins or other
feminine hygiene articles during strip searches.  Accordingly,
defendant cannot be held liable under § 1983 for such conduct.

---

[64]     Deposition of Maria Collazo, at page 39.

[65]     <u>Id.</u>, at pages 74-75.

**Jane Does 1-16**

In Defendants' Memorandum of Law, defendants contend that the court should dismiss all claims against defendants Jane Does 1-16 because discovery is closed and plaintiff has not substituted any specific named parties for any of the Jane Doe defendants.[66]

In a non-precedential opinion in <u>Blakeslee v. Clinton County</u>, 336 Fed.Appx. 248, 250 (3d Cir. 2009) the United States Court of Appeals for the Third Circuit stated that Jane Doe defendants must be dismissed if "reasonable discovery does not unveil the proper identities".  Courts in this judicial district have held that when reasonable steps are not taken to identify Jane Doe defendants and to amend the complaint to substitute identified parties for such defendants when their identity is discovered, the claims against Jane Doe defendants must be dismissed with prejudice.  <u>Ayres v. Berks County Sheriff's Department</u>, 2010 U.S.Dist. LEXIS 22119, at *4 (E.D.Pa. March 10, 2010) (Perkin, M.J.); <u>Williams v. Lower Merion Township</u>, 1995 U.S.Dist. LEXIS 11083, at *9-10 (E.D.Pa. Aug. 2, 1995) (Kelly, J.).

The record before the court reveals that plaintiff knows the identity of at least two potential Jane Doe defendants: the two officers who searched her upon her admission to Lancaster

---

[66]   Defendants' Memorandum of Law, at pages 17-18.

County prison on August 12, 2008 and September 27, 2008. Included in the record before the court are plaintiff's two Strip Search Checklists.  On these documents, next to "This Prisoner Has Been Searched By Me", are the names Cindy Rockwell and Officer Rychalsky.[67]  Plaintiff had access to these forms as early as November 17, 2010, but may not have been able to read the handwritten names.[68]

Plaintiff became aware of these names at least by the time plaintiff deposed Warden Vincent Guarini, on September 20, 2011, more than eleven months ago, because Warden Guarini identified the names of these individuals in his deposition.[69] Not only is plaintiff aware of these two officers' identities, but plaintiff also deposed Officers Rockwell and Rychalsky in connection with the present matter on January 10, 2012.[70]

Plaintiff alleges that the officer who searched her upon her admission to Lancaster County Prison on August 12, 2008, Officer Rockwell, lifted up plaintiff's stomach and breasts, and, without gloves, put her finger in plaintiff's mouth.[71]  Plaintiff

---

[67]    Deposition of Warden Vincent Guarini, at pages 18 and 30; Guarini Deposition, Exhibits 1 and 4.

[68]    Letter dated November 17, 2010 from Christian Earl Eaby, Esquire to Timothy J. Kepner, Esquire, Exhibit 21 to Plaintiff's Memorandum of Law.

[69]    Id.

[70]    Deposition of Cynthia Rockwell, at page 25; and Deposition of Bernadette Rychalsky, at page 22.

[71]    Deposition of Maria Collazo, at pages 39 and 79.

also alleges that the officer who searched her on September 27, 2008, Officer Rychalsky, also put her finger in plaintiff's mouth and put her hands through plaintiff's hair.[72]

Plaintiff had access to the Strip Search Checklists, from which she could have obtained the names of these two Jane Doe defendants, whom plaintiff alleges touched her during an illegal strip search, by requesting identification of the handwritten names from Lancaster County prison as early as November 17, 2010, more than one year and nine months ago.

Plaintiff has been aware of the identity of two other Jane Doe defendants, Cynthia Rockwell and Bernadette Rychalsky, for more than eleven months, yet has not requested leave to amend her Complaint to substitute their names for two Jane Doe defendants.  Pursuant to the holdings in Ayres and Williams, supra, plaintiff has no claims against Officers Rockwell and Rychalsky in their individual capacities because plaintiff has not made reasonable efforts to amend her Complaint to add their names.

Under the rationale of Blakeslee, supra, I dismiss the remaining Jane Doe defendants because reasonable discovery has not led to their identification.  Although defendants keep records of when new inmates are strip searched upon their admission to the prison, it is unclear what, if any, records are

---

[72]    Deposition of Maria Collazo, at pages 72 and 75-77.

kept of any subsequent strip searches.  Despite the possibility
that there may be records of strip searches conducted after
plaintiff's admission to Lancaster County Prison, she provides no
documentation or other evidence demonstrating an attempt to
obtain any records regarding such strip searches from that
prison.

There is a dispute among the deponents concerning the
existence of a record of any strip searches conducted upon an
inmates' return from court proceedings and after contact visits.
Commitment Officer Louis Chirichello indicated that records were
kept of searches upon the return of an inmate from court.[73]

Staff Development Coordinator Carl Jones testified in
his deposition that a record is kept of the strip searches which
occur after an inmate returns from court and after visitation
only if something is found.[74]  In contrast, Warden Vincent
Guarini testified in his deposition that no record is kept of
strip searches of inmates after court hearings or visits.[75]

The only evidence plaintiff has provided the court
concerning her attempt to determine the identity of those who
strip searched her are two letters from her attorney to former
defense counsel Timothy J. Kepner.  In this correspondence,

---

[73]    Deposition of Louis Chirichello, at pages 22-23.

[74]    Deposition of Carl Jones, at pages 25-26.

[75]    Deposition of Warden Vincent Guarini, at pages 28-29 and 50-51.

Attorney Kepner wrote to plaintiff's counsel that he is unaware of the identity of the Jane Doe defendants because "there is no written record that identifies the person that conducts a strip search of an individual who is being transported to or from Lancaster County Prison for court hearings", and as such, he does not have the ability to identify anyone who may have strip searched plaintiff.[76]

Discovery is now complete.  It is clear that plaintiff is now aware of the two officers who, according to the Strip Search Checklists, searched plaintiff on August 12, 2008 and September 27, 2008: Officers Rockwell and Rychalsky.  However, plaintiff has not requested leave to amend her Complaint to substitute their names for two of the Jane Doe defendants.

Plaintiff has also failed to provide any documentation reflecting effort on her part to obtain any prison records that may exist regarding strip searches conducted on her upon her return from court or after visitation.  For the foregoing reasons, I dismiss the claims against defendants Jane Does 1-16 with prejudice.

<u>CONCLUSION</u>

Defendants have satisfied their burden of demonstrating the absence of genuine issues of material fact.  Thus, the burden

---

[76]    Letter dated November 12, 2010 from Timothy J. Kepner, Esquire to Christian Earl Eaby, Esquire, Exhibit 21 to Plaintiff's Memorandum of Law; and Deposition of Warden Vincent Guarini, at pages 28-29 and 50-51.

has shifted to plaintiff to establish the existence of each element on which she bears the burden of proof.  See Eastman Kodak Company, 235 F.3d at 857-858.

Plaintiff has demonstrated that there is a dispute regarding whether plaintiff was touched during any of the strip searches and whether the blinds on the glass windows in one of the rooms used for strip searches were always closed.  However, because defendants are a municipality and two municipal agencies, one element plaintiff must establish is that the municipal defendants had a custom or policy to leave the blinds open or touch inmates during strip searches.

Plaintiff's reliance on the Complaint in the Kurian class action suit against defendants for illegal strip searches, which alleges nothing about conducting strip searches in the sight of others of the opposite sex or touching inmates during strip searches, is insufficient to satisfy the requirement of a municipal custom or policy in a § 1983 claim against the municipality.

For the foregoing reasons, I conclude that no genuine issues of material fact exist to preclude granting Defendants' Motion for Summary Judgment.  Therefore, I grant the motion.

Furthermore, I dismiss all claims against defendants Jane Does 1-16 because plaintiff has not timely sought to amend

her complaint to add any specific named individuals in place of
the Jane Doe defendants.